**STATE OF WEST VIRGINIA**

*In re* **D.R.**

**No. 18-0366** (Logan County 17-JA-54)

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.R., by counsel Erica Barker Cook, appeals the Circuit Court of Logan County's March 26, 2018, order terminating his parental rights to D.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Rebecca E. Mick, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative and not considering the child's wishes regarding whether he wanted his father's parental rights to be terminated.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 18, 2017, the DHHR filed an abuse and neglect petition against petitioner. The DHHR alleged that there was a prior petition filed in January of 2014, alleging that petitioner had sexually abused A.M.[2] That petition was ultimately dismissed after A.M. recanted the allegations. In December of 2016, following A.M.'s admission into Highland Hospital, the DHHR received a referral alleging that petitioner had sexually abused A.M. for the preceding eight years. Following the referral, a Child Protective Services ("CPS") worker spoke to the mother, who later agreed to monitor the interactions between A.M. and petitioner. The CPS worker spoke with A.M.'s therapist, who stated that A.M. indicated to her that she had been sexually abused by petitioner. The petition further alleged that in April of 2017, the DHHR received a referral that A.M.'s mother took her to the emergency room for a sexual assault

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]A.M. was petitioner's stepdaughter and lived in his home when the abuse and neglect petition was filed. Parental rights with respect to A.M. are not at issue in this appeal.

1

examination. In August of 2017, the DHHR received a call from Logan Regional Medical Center, where A.M. was in the emergency room and had disclosed that petitioner had been sexually abusing her since she was six years old. The child advised that she had falsely recanted the 2014 disclosure and reported that recanting it was "the lesser of two evils." She also reported that she did not think anyone would believe that she was being sexually abused. On August 17, 2017, A.M. underwent a forensic interview. She reported that she showed her mother a video of the most recent incident of sexual assault by petitioner, but the mother did not say anything in response. Following the disclosure to her mother, A.M. said she then packed her clothes and ran away from home on August 16, 2017. During the forensic interview, the child also reported that petitioner had been sexually abusing her since she was six years old. Petitioner waived his preliminary hearing.

On October 18, 2017, the circuit court held an adjudicatory hearing during which the DHHR presented the recording of A.M.'s forensic interview wherein she alleged sexual abuse by petitioner. The DHHR also presented testimony from Trooper Stowers of the West Virginia State Police who located A.M. on August 16, 2017, after she ran away from home. The child advised him that she ran away because petitioner sexually abused her. When Trooper Stowers questioned petitioner, petitioner confessed to sexually abusing the child in the home approximately five times over the course of a year. Trooper Stowers arrested petitioner and he was charged with third-degree sexual assault and second-degree sexual abuse. Trooper Stowers also testified that the mother made a statement to him that she left petitioner home with A.M. during the time of the alleged sexual abuse. Petitioner was adjudicated as an abusing parent in regard to his child, D.R.[3] He moved for visitation and a post-adjudicatory improvement period, which the circuit court denied. The circuit court found that, due to the aggravated circumstances of sexual abuse, the DHHR was not required to make reasonable efforts to reunify the family. On December 12, 2017, the DHHR filed a motion to terminate petitioner's parental rights to D.R.

On March 6, 2018, the circuit court held a dispositional hearing, during which it took judicial notice of the evidence presented at the adjudicatory hearing and denied petitioner's motion to relinquish his guardianship rights to D.R. The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because of "[t]he sexual assault of the [i]nfant [r]espondent, [D.R.]'s, half-sister, [A.M.], by [petitioner], while the two siblings were residing in the home of [petitioner]." The circuit court found that termination of petitioner's parental rights was the least-restrictive dispositional alternative available. It further found that, due to the abuse of A.M., it was in D.R.'s best interests to terminate petitioner's parental rights. Ultimately, the circuit court terminated petitioner's parental rights to D.R. in its March 26, 2018, order. It is from this order that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

---

[3]West Virginia Code § 49-4-201 defines "abused child" to include another child living in the home with a child whose health or welfare is harmed by a parent, guardian, or custodian.

[4]The circuit court accepted the mother's voluntary waiver of guardianship, and the child's permanency plan is legal guardianship with his maternal aunt.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative. In support, he argues that the circuit court could have imposed a less-restrictive disposition because D.R. is in a relative placement and the permanency plan is not adoption, but guardianship. We do not find this argument persuasive. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. West Virginia Code § 49-4-604(c) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing [parent has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Although it is unclear from the record how long the sexual abuse had been ongoing, petitioner does not deny that he sexually abused A.M. and admitted to Trooper Stowers that he sexually abused A.M. on multiple occasions. Therefore, we find that, based on the evidence and the egregious circumstances of this case, the circuit court correctly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Further, because D.R. also lived in the home and was, therefore, also an abused child, it is clear that the termination of petitioner's parental rights was in the child's best interests.

While petitioner argues that he should have been entitled to a less-restrictive dispositional alternative than the termination of his parental rights, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code

§ 49-4-604(c) ] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Therefore, we find that the termination of petitioner's parental rights was proper.

Next, petitioner argues that the circuit court erred in not considering D.R.'s wishes regarding whether he wanted petitioner's parental rights to be terminated. Petitioner acknowledges that there is no evidence in the record to support this argument. However, petitioner states that "he did not believe his son wanted his father's parental rights terminated." Pursuant to West Virginia Code § 49-4-604(b)(6)(C) "[n]otwithstanding any other provision of this article, the court shall give consideration to the wishes of *a child fourteen years of age or older* or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." (emphasis added). At the time the petition was filed, D.R. was eight years old; at the time of disposition, he was nine years old. Therefore, due to the child's age, the circuit court was not required to consider D.R.'s wishes in its decision of whether to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 26, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating